Madam Clerk, please call the first case. 113-2857, Joseph Knepper v. Billy DeVonecker. Counsel, you may proceed. May it please the Court, good afternoon, Your Honors. Good afternoon, Counsel. My name is Brent Ames, and I'm one of the attorneys here for the plaintiff, Joseph Knepper, asking that this Court reverse the decision of the Circuit Court, which upheld the decision of the Workers' Compensation Comm'n, which found that the plaintiff did not suffer an accident, which occurred in the course of his employment on February 2, 2010, and also found that proper notice of said accident was not given to his supervisor on that same date. And I must acknowledge these are questions of fact, which pose a significant burden, so I will be concise with my argument today. There's another hurdle you've got to overcome, because it appeared that, in general, the theme is the Commission didn't believe the claimant's credibility. There was a finding negative regarding credibility, Your Honor, yes. And if the plaintiff's credibility was the only thing going for him in this case, that would pose a much more significant hurdle. There is several other issues which the trier of fact disregarded in coming to find that no accident occurred. And I must focus on the issue of notice, because I understand that if there's no accident, then, of course, there can be no notice. But in this case, notice is some of the best evidence of an accident for the plaintiff. And specifically, the respondent's exhibit 2, the incident report from this incident, specifically is a form from the Village of Winneka. It has a box which indicates the date the injured person reported the accident and to whom. The form indicates, this is the respondent's own form, that the accident was reported to Bill Willing, who is not only the plaintiff's supervisor, but his supervisor's supervisor, certainly under the law, someone that is appropriate to report an accident to. And that occurred on the date of the accident, February 2, 2010. And the defendant called five different witnesses from the village, five different witnesses. The one they did not call would be Bill Willing, who would be the one person capable of contradicting the plaintiff's testimony that he did not report that accident. Also, this testimony is corroborated by the testimony of Michael Maloney, who is the direct supervisor of the plaintiff. Michael Maloney indicated that upon learning for the first time, according to him, of the accident on May 27, about three months later, he talked to Bill Willing, said, you know, did this happen? And he sent the plaintiff back to Bill Willing, his supervisor, to figure it out. He testified, well, I don't know what agreement they came to, but what's undisputed is that Bill Willing, his supervisor, told him after this meeting with the plaintiff, yes, mark it down, he told me on February 2, 2010. That is unrebutted testimony, and obviously the plaintiff's credibility issue is something to consider, but when taken into account with this Respondent's Exhibit No. 2, as well as Michael Maloney's testimony regarding the issue of notice, it is clear that the finding that there was no notice on that date is against the manifest weight of the evidence. What was the date of the notice? February 2, 2010, the same date as the alleged accident. In addition to the Respondent's Exhibit No. 2 and the testimony of Michael Maloney, which went disregarded by the trier of fact, we have what I want to refer to as the actual evidence in the case, because obviously the issue in this case is the slip and slide incident of which, you know, there's really no direct evidence that anything such as this ever happened. We have medical records from the start, including Respondent's doctors, Dr. Piazza, Dr. Bolden, Dr. Dixon, Dr. Herman, North Shore University, and Dr. Bledin, the IME, all provide a consistent history of accident, that being he was alighting from a snow plow, he grabbed the railing to break his fall, he noticed the twinge into his neck, ridiculous symptoms into his arm. What was the medical, let me just interject, what was the medical opinion testimony cited by the commission that the claimant's injuries are most likely the result of a slip and slide issue? Who testified as to that? The only evidence of a slip and slide issue was a hypothetical which was posed to Dr. Living, the IME doctor by our Respondent's counsel during this deposition testimony. What about the co-worker's testimony? Wasn't that evidence? The co-worker's testimony is evidence. It's hearsay. It is by definition hearsay. And although it's admissible as a statement by a party opponent, it doesn't change the fact that it's hearsay. And the only direct evidence in this case, aside from that hearsay evidence, is the medical records, the testimony of the plaintiff. The only history of any accident whatsoever, completely consistent throughout, taking aside this hearsay, is that there was an accident while he was alighting from a snow plow. How is it hearsay? It's an admission. It's an out-of-court statement by the plaintiff that he denies ever making. Well, I understand he denies ever making it, but the witness says, claimant told me I was involved in this other accident that caused me problem. Isn't that an admission? It's not an admission in the sense, the testimony, it's a Paul Torres, a Sean Fenzel, and Bob Dvorak. And if the testimony is taken to what is considered essentially, you've got three guys with no real recollection of anything other than, oh, by the way, yeah, sometime in May I had a conversation, and he indicated that he bought a slip and slide, tried it out, and I think he said he hurt his chicken wing, is the testimony. Part of the body that he claims was hurt in the industrial accident. Partially, regarding the arm, but industrial accident is mainly concerning the neck. Are you saying it's inadmissible hearsay? It's not inadmissible. No, if it's admissible hearsay, then it's evidence and it can be considered. It certainly can be considered, but hearsay by its nature is not great evidence. Well, it's hearsay. Hold on a second. Admission by a party of court is an exception to the hearsay rule. It's not hearsay. It is. It's an exception to the rule. Right. So according to you, if police officers take a confession of something and testify to it, nobody should get the trifecta and just basically ignore that because it's hearsay. It shouldn't be ignored. It's evidence that's in the record. However, it's not the strongest evidence that is in the record. Some people might disagree that admission is not strong evidence. The plaintiff's position is the strongest evidence in the record is the consistent medical records across the board. That's the commission's decision to draw not ours. We need to be given that that testimony belongs to the commission, not to us. But by not considering the Respondents' Exhibit 2 regarding the accident report regarding notice, indicating that no notice was ever given, ignoring the testimony of Michael Maloney and the unrebuttedness in the nature of the plaintiff's testimony regarding the notice, the trifecta not considered all of the evidence, and that's how the decision came to be against the magistrate. So therefore, we must find him credible. It's not necessarily. Based upon all the evidence in the record, it's possible to find the plaintiff not credible, as the commission did, but still find that this accident occurred. Let me ask you a question. This accident allegedly occurred in February, February 2nd. Is that the exact date? That's correct, Your Honor. February 2nd, 2010. What's the first date he sought medical treatment? Well, there was a note from March 13th of 2010 from a massage therapist. When did he first seek medical treatment? He saw the company's medical doctors on May 27th. May 27th. And the co-workers, Torres, Fensel, and Dvorak, each testified that they were present together with him on a Monday morning in May of 2010 when he told them he'd hurt his neck and chicken wing on a slip and slide. Now, if the first time he goes for medical treatment is May of 2010 on an accident that occurred in February of 2010, and three of his co-workers testified that he told them in May of 2010 that he hurt himself on a slip and slide, do you think it's outside the realm of possibility that the commission might believe those co-workers that this guy didn't hurt himself in February, but he hurt himself in May? The massage therapy note is important to point out to answer that question, because if, as the defendant had him believe that this phantom accident in May was the cause of all these injuries and the condition of well-being, two months prior to these alleged conversations and two months prior to this alleged slip and slide incident, he was at the massage therapist complaining of pain in his neck. The defendant contends, well, that really is irrelevant because it doesn't contain a specific history of an accident, but it's important in and of itself that we have a document, evidence of pain before this slip and slide injury was ever alleged to occur and after the subject accident of February 2, 2010. The plaintiff testified that it was routine in this job for the village for workers to work through what they call bumps and bruises and a pulled muscle, I think, is what he thought he had originally. That was corroborated by the other workers. So certainly it's more possible, more probable that the accident date with proper notice on February 2, 2010 was the cause of his condition of well-being and not this phantom accident that hearsay evidence is the only thing that we have to go on. For the foregoing reasons, the plaintiff respectfully requests this court overturn the decision of the Circuit Court which upheld the Commission's decision finding no accident and no notice. Thank you, Counsel. We have time on the clock. Counsel, you may respond. Good afternoon, Justices. May it please the Court. Counsel, Rory McCann here on behalf of the village of Winnetka. This claim has no merit. It's not just my opinion. It was the opinion of Arbitrator Black and that opinion was confirmed unanimously by the Commission panel and further endorsed by Circuit Court Judge O'Neill-Burke. And in sum, there are many, many reasons for the opinion, the original opinion of the arbitrator which was then endorsed by the Commission as addressed during questioning. Credibility was the significant reason why Petitioner was unable to sustain his burden. What about his statement when we asked about that, or his reference to the accident report which appeared to document that he timely reported in February? How did we just ignore that? Well, Justice Hudson, the report was completed in late May, 27. And a careful review of the record suggests that what occurred is that his direct supervisor, Mr. Mahoney was first informed of an alleged work accident in late May, May 27, 2010. At the time, Mr. Knepper said, well, if you recall, I brought this to your attention in February contemporaneous with the accident, and Mr. Mahoney said, no, I do not recall. And he said, oh, well, wait, it must have been Mr. Willing, who's the direct supervisor of Mr. Mahoney. It's also laid out, and we anticipated the questions about Mr. Willing, and if you look in the record, he's retired. Which is why he was not down there. But we anticipated the questions of where's Mr. Willing's testimony in this regard. And as addressed by Mr. Saunders and Mr. Mahoney, there is a very detailed process as far as reporting injuries at the village of Winnetka. And Mr. Knepper is very familiar with that process, and we documented the prior work injuries that he had reported before, always to the direct supervisor, always on the day of. He is now claiming that he informed Mr. Willing, and as Mr. Mahoney testified, he asked Mr. Willing about it. Mr. Willing said, well, you're a supervisor, you fill out the report. And Mr. Mahoney said, no, I'm not going to do that, because I didn't take notice of this. And Mr. Willing said, well, fill out whatever he says. That was the testimony. There was no admission, as counsel has characterized it, that an accident occurred, that we were given no support. Who filled out the report he's talking about? Mr. Mahoney, the direct supervisor in May. In May, not in February? Correct. What's this document that says we're dated in February? Was there a document ever dated in February? No, not in the record. So, you know, essentially, my client came to learn of this alleged incident for the first time in late May. And at the same time, information got back from the other three gentlemen that, oh, by the way, Mr. Knepper was discussing his activities on the slip and slide at home, and isn't that coincidental now that he's seeking treatment? So the arbitrator had an opportunity to observe the testimony from the five witnesses that we produced, observe Mr. Knepper and his wife, and, you know, arbitrator Black's conclusions were very simple. Mr. Knepper attempted to coerce two witnesses. He appeared irritated when he was testifying. His testimony was premeditated, brusque. He asked six questions. At the end, at the conclusion of the opinion, he notes six questions that cannot be resolved in favor of Mr. Knepper. Specifically, why would the co-workers testify under oath and lie about the story? He noted there was no notice of the direct supervisor when notice had been given prior appropriately by Mr. Knepper. And, you know, he noted the various other issues as well, the fact that he waited four months, the fact that he, first of all, counsel also noted that the medical history is consistent and that's not the case. He initially reported the accident occurring in May and confirmed that on cross-examination to Dr. Piazza. And then Dr. Bogle, the second doctor he saw, he also said the injury occurred in May. So the fact that there's a claim now that there's consistent testimony as to a February accident is just incorrect. So Mahoney filled out a report. What was the date on the report? May the 27th. May the 27th. Correct. He had no reference to February on there at all.  He referenced the petitioner's report that I got hurt on February 2nd. His report in February, but nothing documenting, nothing contemporaneously documenting it in February. His report was filled out referencing what he was told about a February incident. Right. It's Mr. Knepper's report. Right. And that's what he cleared up. You're reporting the accident. What are you reporting? And the report was clearly prepared in late May, and they documented what he said. I don't think there's any confusion there. Okay. And just to sum up, at this point, if there's no further questions, we're obviously asking that you complete their arm. Thank you, counsel. Thank you. Counsel, you may reply. Just so we're clear, this report you're talking about was made out on May the 27th. Yes. It wasn't made out on February 2nd. It was made out on May 27th. So why is it evidence of an accident? Well, on the report itself, there's a special box which indicates when was the accident reported and to whom, and per Bill Willing's instruction on that report. They don't believe him, and he can say anything. Somebody can say a year later that it happened a year ago. That doesn't help your credibility decline at all. It was Bill Willing, per Bill Willing's instruction. The supervisor, Mr. Mahoney, the direct supervisor. Who filled it out? Mahoney. Yes, Mahoney. And he testified that he was told just write down whatever this man tells you. In so many words, but essentially per the testimony. Quote, write down whatever. A close quote. If I may just address the medical, the history of the accident, I know there was an issue in the initial date that was wrote down in the initial doctor that he saw, but the history of the accident was consistent throughout each and every visit to each and every doctor. Wait a minute. Hold on a second. It was what? The history of how the accident occurred, that being alighting from the snowplow, grabbing the bar. What did he tell Dr. Piazza? What did her notes say? Dr. Piazza's notes indicate that the accident. May the 19th, 2010. Yes. And then he admits that he gave Piazza an injury date of May the 19th. And what was Dr. Vogel, what did his notes say? The doctor's notes, I believe, indicated that the date was the 19th or the. May the 15th or May the 19th. Yes. That's correct. So is there any surprise that the commission might have some problems with his credibility? Well, Your Honor, the credibility issue is a determination by the trier of fact is what it is. There is additional evidence that was disregarded, including the report, the non-testimony of Bill Willing. There was a suggestion by the defendant that was picked up in the opinion that indicated, well, what a coincidence he picked the guy that retired to say that he reported the accident to. But that would be unfair given the fact that this reporting occurred in 2010. Mr. Willing retired in 2011. Say what you want about the plaintiff and his credibility, but certainly he could not have foreseen that somebody would be testifying several years later, and, oh, good, he's going to retire before then, so he'll. Let's not ignore the whole fundamental premise of every case that we hear. The burden is on the claimant to prove the case. The employer does not have to disprove any evidence, correct? That's correct, Your Honor. Thank you, counsel. Thank you. Thank you, counsel, both for your arguments. This matter will be taken under advisement and written disposition shall issue.